**RADIO CORPORATION OF AMERICA v. MACKAY RADIO & TELEGRAPH CO., Inc.**

No. 7234.

District Court, E. D. New York.

Oct. 14, 1936.

Sheffield & Betts, of New York City (Jo. Baily Brown, of Pittsburgh, Pa., Harry Tunick, of Rye, N. Y., and Abel E. Blackmar, Jr., of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Hugh M. Morris, of Wilmington, Del., and Samuel E. Darby, Jr., Paul Kolisch, and Roy C. Hopgood, all of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of certain claims of five patents as follows:

1. Patent No. 1,623,996 issued to Philip S. Carter, assignor to Radio Corporation of America for radio transmission system, granted April 12, 1927, on an application filed June 25, 1923, of which claims 1, 2, 5, and 7 are in suit. This patent will be hereinafter referred to as the first Carter patent.

2. Patent No. 1,909,610 issued to Philip Staats Carter, assignor to Radio Corporation of America for electric circuit, granted May 16, 1933, on an application filed March 12, 1930, of which claims 1 to 5 inclusive are in suit. This patent will be hereinafter referred to as the second Carter patent.

3. Patent No. 1,884,006 issued to Nils E. Lindenblad, assignor to Radio Corporation of America for antenna, granted October 25, 1932, on an application filed September 7, 1928, of which claims 23 to 27 inclusive are in suit. This patent will be hereinafter referred to as the first Lindenblad patent.

4. Patent No. 1,927,522 issued to Nils E. Lindenblad, assignor to Radio Corporation of America for antenna for radio communication, granted September 19, 1933, on an application filed December 24, 1928, of which claims 9, 10, 19, and 23 are in suit. This patent will be hereinafter referred to as the second Lindenblad patent.

5. Patent No. 1,974,387 issued to Philip Staats Carter, assignor to Radio Corporation of America for antenna, granted September 18, 1934, on an application filed June 11, 1930, of which claims 1, 2, 3, 4, 10, 12, 15, 16, 28, 34, 35, 36, 38, and 40 are in suit. This patent will be hereinafter referred to as the third Carter patent.

The first two Carter patents are directed to the subject of impedance matching. The two Lindenblad patents and the third Carter patent are directed to the subject of antennas. I will consider them in the two respective groups.

The defendant by answer has pleaded the defenses of invalidity and non infringement.

The title to the patents in suit is in the plaintiff and notice of infringement was properly given.

There is no dispute as to the construction or arrangement of the defendant's antenna systems, and they are fully described in the agreed descriptions, diagrams, and tabulations of dimensional data comprising plaintiff's Exhibits 7 to 13 inclusive. The antennas which are asserted to infringe are known as V-antennas Nos. 1 to 11 inclusive (two of which have been rebuilt) and certain other antennas known as "dipole arrays." The antennas referred to as having been rebuilt are obviously defendant's antennas Nos. 2 and 3, the rebuilding of which was occasioned by commercial requirements of establishing additional communication channels in a different direction from that in which they had previously been used. Various alterations occurred in the rebuilding process, and as these rebuilt antennas were not rebuilt until after the main and supplemental bills of complaint were filed in this suit, they cannot properly be considered by this court under the charge of infringement on the pleadings in this suit.

The desirability for, and the utilization of an impedance matching arrangement was known many years prior to the earliest date which could be claimed by Carter. In the transmission of electrical

energy over a line, whenever, as is usually the case, the impedance of the load differs from the impedance of the transmission line, energy will not flow smoothly into the load, but part of it will be reflected back into the line towards the source of power, and cause "reflection," "standing waves," "reflection loss," etc. Also, when there is a sharp bend in a transmission line a difference of impedance results which causes reflection. If, however, the impedance of the load is matched to the impedance of the line there are no reflected waves, and there is obtained what is termed a "reflectionless line," "a traveling wave," a "line of electrically infinite length," etc. These terms (as well as others mentioned on the trial and in the briefs herein) are synonymous and the desirability for impedance matching, as well as the means employed for effecting it, is not concerned with the purpose for which the current being transmitted is used. I can see no difference whether impedance matching be effected in a radio receiving system, a radio transmission system, a telephone line, a power line or in any circuit. The second Carter patent in suit is entitled "Electrical Circuit," and is applicable to any circuit arrangement where efficient transfer of energy without reflection is desired. Unequal impedance is always the cause of reflected waves, and the cure is always equal or matched impedance.

Impedance matching devices for the purpose of preventing reflection on transmission lines have been used for many years in radio transmitting systems, at least, since 1920, and as the first Carter patent in suit was not applied for until 1923, there was nothing novel at that date in the necessity for matching impedances, or in the principle that by matched impedances reflected waves on the transmission line were avoided.

The first Carter patent No. 1,623,996:

This patent is directed to the subject of a reflectionless transmission line obtained by matching the surge impedance of the line with the load impedance of the antenna which it feeds. A transformer is the only means shown or suggested for accomplishing that purpose, and two forms of transformers are illustrated namely the usual two coil transformer illustrated in Figs. 1, 3, and 5, and the auto (one coil) transformer of Fig. 2.

It is pointed out in the patent that in the past it has been the custom to erect the antenna of a transmitting system as close as possible to the point when the radio frequency power is generated in order to have "a minimum power loss between the generator and the antenna." The patentee in his specification states the objects of his invention to be as follows: "The provision of a transmission line which will supply radio frequency energy from a power-house to an antenna located at a considerable distance away, thus making possible the utilization of existing apparatus at a high efficiency where hitherto only a low efficiency was possible. Another object of the invention is to provide a new and improved system giving directional transmission utilizing separate antennae fed from a single source through a plurality of transmission lines."

Claims 1, 2, and 5 have to do only with the first stated object. Claim 7 has to do only with the second stated object.

It is pointed out in the specification that in order to attain the first object of the invention it is necessary that the apparatus work "at unity power factor; that is to say that the current and voltage in the transmission line should be in phase," and the patent further says: "Such a result may be obtained if the transmission line is made reflectionless or of electrically infinite length. Under these conditions no waves can be reflected back from the ends to interfere with the natural flow of energy into and out of the transmission line."

The invention of the patent consists in making reflectionless the transmission line extending between the source of the current and the load. The patentee says in his specification: "This result may be obtained by closing the transmission line 10 at 11 in such a manner that the effective impedance at the load end of the line is equal to the surge impedance of the transmission line."

This statement means that the impedance of the load is matched to the impedance of the line throughout the entire length thereof.

The problem as stated is how to bring about or produce that condition.

The recital by Carter of what purports to be his solution of the problem amounts simply to this: The antenna resistance multiplied by the square of the feed ratio should be equal to the surge impedance of the line.

This is a statement in terms of results, without any instruction as to how to accomplish these results. The only thing shown in the drawings of the patent for accomplishing the result is a transformer,

but there is no statement, nor is it implied or indicated how the transformer is to be made, adjusted, or set up in order to make it possible to close, "the transmission line 10 at 11 in such a manner that the effective impedance at the load end of the line is equal to the surge impedance of the transmission line."

The first Carter patent in suit is a paper patent, and in view of the prior art in evidence to wit, Alexanderson patent, No. 1,360,167; Rice and Kellogg patent, No. 1,-602,085; Colpitts patent, No. 1,129,959; Leblanc patent, No. 874,411; Heising patent, No. 1,313,483; Conrad patent, No. 1,-640,534; Reuthe patent, No. 1,314,095 and Whiting patent, No. 1,537,101, it can be given only a limited range of equivalents sufficient to protect the invention of that patent.

Defendant does not employ any connection between a transmission line and a radiator, where at the point of connection, an impedance matching device is employed.

The defendant in every antenna under charge of infringement in this suit employs an impedance matching device located in the transmission line at a distance from the antenna wires.

No transformer connecting the end of the transmission line with the antenna is used by the defendant in any of its antenna systems under charge of infringement in this suit.

The defendant does not employ a transformer as an impedance matching device in any of its said antenna systems.

Claim 1 recites as the elements of its combination "an energy radiating circuit (an antenna), a source of power for energizing said circuit (the generator), and a transmission line of electrically infinite length connecting said circuit and said source."

Fig. 1 of the patent shows the transmission line 10 extending to the antenna, as is necessary in a system where a transformer connects the antenna with the transmission line, and the patent in suit instructs to terminate the line with a transformer.

No such arrangement or any arrangement which might be correctly described by this language is shown in any of the defendant's alleged infringing devices.

This is also true with respect to claims 2 and 5 in suit, the last element in each of which is defined as a reflectionless transmission line connecting the source and the antenna or radiating circuit.

Antenna No. 2, which is typical of its class, shows that the transmission line extends from the transmitter to the radiators (antenna wires ACBD), but the impedance matching device (KLMN) is located on the transmission line a substantial distance from the radiators, therefore defendant does not employ "a transmission line of electrically infinite length connecting the radiator (ABBD) and the source" (the transmitter).

Antenna No. 7 of defendant's devices has reflected waves on the entire portion of the transmission line leading from the power house to where the transmission line branches, as well as from the radiators to the points E F and E'F'.

By their terms each of claims 1, 2, and 5 are limited to a transmission line connecting the antenna and the source of power which is reflectionless throughout its length.

Defendant does not employ in any of its antenna systems a transmission line connecting the source of current to the radiating antenna which is reflectionless throughout its length.

In defendant's devices the production of reflected waves on a portion of the defendant's line is a necessary expedient for successful operation and defendant's antenna system could not operate if defendant's arrangement were used in a manner to entirely eliminate reflected waves throughout the length of a transmission line. Defendant's antenna No. 2 (original) best illustrates this point.

Claim 7 of the patent in suit recites as the elements of its combination: A plurality of antennae; a single source for supplying energy to all of said antennae; and transmission lines of electrically infinite length for supplying energy from said source to said antennae.

It thus appears that claim 7 is limited in addition to the limitations of claims 1, 2, and 5, to at least two transmission lines of electrically infinite length which supply power from a single source to two or more antennas.

Plaintiff attempted, but unsuccessfully, to apply this claim to defendant's antenna systems like antenna No. 8.

From a careful consideration of the evidence, it appears that the defendant's devices, which are alleged to infringe, use a radically different arrangement to accom-

plish an old result, and irrespective of the validity of the patent in suit or whether or not the claims are readable on defendant's antennas. Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136.

The defendant does not infringe the first Carter patent, No. 1,623,996.

The second Carter patent, No. 1,909,610:

This patent, like the first Carter patent, is directed to the subject-matter of matching the surge impedance of the line to the impedance of the load to which the line feeds. As its object is identical with that of the first Carter patent, which was applied for nearly seven years and issued nearly three years prior to the application of the second Carter patent, the subject-matter of the said second Carter patent is and must be confined to the particular instrumentalities, arranged in the particular way shown and described by the patent to effect impedance matching.

The second Carter patent is not specifically directed or limited to use in connection with radio antennas, but to electric circuits in general, and for use in any field where reflectionless transmission lines, matched impedances, elimination of standing waves, etc., are desired.

The patentee in his specification says: "This invention relates to electric circuits and especially to a transmission line supplying high frequency currents to a high frequency load circuit," and then recites what is well known in the prior art: "In order that the line transmit energy at best efficiency; that is to say, without reflection, it is desirable that the line be terminated by a load which equals in impedance the surge impedance of the line."

After noting that lines and loads are independently designed, and that existing lines must be connected with existing loads which do not have the requisite values of impedance for best energy transmission, the patentee states: "It is an object of my invention to provide a method and means for terminating a line to which a load is connected so that the termination means combined with the load presents the correct impedance to the line. More specifically, I accomplish this by connecting a variable reactance across the line at a distance away from the load such that the circuit formed thereby including the variable reactance, the line portion between it and the load, and the load, presents an impedance equivalent to the surge impedance of the line."

On its face the patent admits, in substance at least, that it differs from the disclosure of the first Carter patent only in the specific "method and means for terminating a line."

The patentee then says: "In a case wherein the surge impedance is greater than the load impedance or resistance, I have discovered that by connecting a capacitive reactance across the line at a distance not more than one-quarter of a wave length of the energy transmitted by the line away from the load; or, by connecting an inductive reactance across the line at a distance more than one-quarter wave length but less than one-half wave length of the load, the combination of the reactance and the load and portion of the line included between the reactance and the load becomes equivalent, with proper quantitative values of the electrical elements involved to the surge impedance of the line, thereby facilitating efficient energy transmission," and then says: "Similarly I have discovered that when the surge impedance of the line is less than the load impedance, by connecting an inductive reactance across the line not more than one-quarter wave length away from it; or, a capacitive reactance across the line more than one-quarter wave length but less than one half wave length away from the load, that the combination of reactance, load and portion of the line included between the reactance and the load becomes equivalent, with proper quantitative values of the electrical elements involved to the surge impedance of the line thereby properly terminating it for maximum energy transmission."

From the foregoing quotations from the patent, it appears that whether the surge impedance is less or greater than the load impedance, the patentee connects a variable reactance across the line, viz., in shunt to the load. That where the surge impedance is greater than the load, the reactance is either capacitive, with its point of connection across the line "not more than one-quarter wave length * * * away from the load," or it is inductive, located "more than a quarter wave length but less than one-half wave length away from the load." That where the surge impedance is less than the load impedance, the resistance connected across the line is either inductive and positioned "not more than one-quarter wave length away from the load," or is capacitive and is connected across the line "more than one-quarter wave length away from the load." That the desired result is at-

tained under either set of conditions only "with proper quantitative values of electrical elements."

The specification describes the arrangements shown in the drawings and sets forth in a table the discovery of the patentee recited in the two paragraphs of the patent hereinbefore quoted.

The disclosure of the patent in brief is that impedance matching may be effected by connecting a variable reactance of proper value across the line at a proper distance from the load. The patent recognizes and twice states that the object of the invention can be attained only "if proper quantitative values of the electrical elements involved" are used, but is silent as to how those values can be ascertained. Further, the patent conveys the idea that at any point within a quarter wave length distance from the load (in the one case), or more than one-quarter wave length but not greater than one-half wave length (in the other case), a reactance connected across the line would obtain the desired result, whereas in fact to attain the results of the patent the point of proper connection of the reactance across the line, that is its distance from the load, was precise and exact in each instance.

This constitutes the whole disclosure of the second Carter patent in suit.

All five claims of the patent are in suit, and each is for a combination.

"Claim 1. The elements of the combination of claim 1 are (1) a source of energy, (2) a load, (3) a transmission line extending between the source of energy and the load and (4) means for matching the load to the surge impedance of the line consisting of

"(a) a reactance connected across said line between said load and said source and so arranged that

"(b) a portion of said line is located between said reactance and said load,

"(c) said reactance having such value that the combination only of the load, portion of the line, and the reactance

"(d) becomes equivalent to the surge impedance of said transmission line.

"Claim 2 differs from claim 1 in defining the reactance as 'a variable element,' and in defining the transmission line as 'an unbroken linear connection characterized by the absence of serially connected impedances between said source and said load.'

"Claim 3 is specific to the situation where the transmission line has a surge impedance greater than the load resistance; the shunt reactance being defined as 'a capacitive reactance' connected across the line between the load and the source a distance from the load not exceeding a quarter wave length.

"Claim 4 is likewise specific to the case where the transmission line has a surge impedance greater than the load resistance, but wherein the shunt resistance is inductive and is connected across the line between the load and the source at a distance greater than one-quarter wave length and less than one-half wave length from the load.

"Claim 5 is specific to the case where the transmission line has a surge impedance less than the load resistance, and there is employed for the shunt resistance an inductance connected across the line at a distance from the load less than a quarter wave length therefrom."

Claims 3 and 4 are specific in reciting that the transmission line has a surge impedance greater than the load resistance; and claim 5 in stating that the transmission line has a surge impedance less than the load resistance.

Although plaintiff contends that defendant's antennas infringe all of the claims in suit, it has not shown which of the two aforesaid conditions prevails in any of defendant's antennas.

In view of the first Carter patent in suit, Whiting patent 1,537,101, British patent to Franklin 282,905, and Lindenblad patent 1,884,006, the second Carter patent in suit cannot have a wide range of equivalents, but must be limited to the protection of the invention of the second Carter patent in suit which is confined to the particular instrumentalities, arranged in the particular way shown and described by the patent to effect impedance matching.

The main object of the second Carter patent in suit is to provide a transmission line reflectionless throughout its length, and none of defendant's transmission lines is reflectionless throughout its length.

This has been fully discussed in this opinion in my consideration of the charge of infringement of the first Carter patent in suit and need not be repeated.

To accomplish its object the second Carter patent in suit discloses only the connection across the transmission line of a

lumped capacitance or a lumped inductance, as specified in each of the claims of the patent in suit and which as additionally provided in claim 2, must be variable.

There is no lumped reactance connected across the line in any of defendant's structures; what defendant uses in every instance, is a plain wire which has only distributed inductance and distributed capacitance. In no instance is the wire a variable element, as shown, described, and claimed in the patent in suit. The only way the patent could be practiced at the time of its application was to experimentally ascertain the value of the reactance by the method of actually varying the value thereof, and therefore variability becomes a necessary limitation in each of the claims whether expressed therein or not.

■ The loops of wire of the defendant's device are not variable in the sense in which a lumped condenser or induction coil is variable. It is true that by cutting off pieces of wire defendant's devices can be varied in one direction, but the word variable as used in the patent does not mean "something which can be changed." Given that meaning, it would lose all sense, as there is no element in a radio antenna system that is not variable in that sense. The term variable, as used in the patent and shown in the drawings, means the ability to increase and decrease the value of the inductance or capacity as the case may be. The defendant employs no variable element in the sense such term is employed either expressly or by inference in all of the claims of the patent in suit.

■ The plaintiff on which rested the burden of proving infringement has failed to bear that burden by offering any proof that in defendant's antenna systems there is a transmission line having a surge impedance greater than the load resistance, as specified in claims 3 and 4, or a transmission line having a surge impedance less than the load resistance, as specified in claim 5.

The defendant used instrumentalities which are different in every respect from the instrumentalities which are disclosed in the patent in suit, and if the distributed inductances and capacitances as used by defendant in its antennas charged to infringe are the equivalent of the lumped inductances and capacitances of the second Carter patent in suit (which in my opinion they are not), then the patent would be anticipated by the British patent to Franklin No. 282,905.

■ Regardless of its validity, the second Carter patent in suit is not infringed by any of the defendant's alleged infringing devices.

Having concluded consideration of the two patents in suit directed to the subject of impedance matching, I will now consider the three patents in suit directed to the subject of the antenna.

As expressly provided in the three antenna patents in suit, the main or principal lobes of radiation, or, as it is sometimes termed, the "predominant radiation," must take place in the plane of the antenna wires, and as additionally provided in the second Lindenblad patent in suit and the third Carter patent in suit along the bisector of the V.

The main object of the three antenna patents in suit was to arrange two or more antenna wires so that radiation take place in the plane of the wires horizontally if the wires are horizontal with respect to the ground, and at an angle if the wires are tilted at an angle.

The wires are arranged parallel to one another in the first Lindenblad patent in suit, and according to it the principal radiation is concentrated in the plane of the wires as distinguished from prior arrangements in which, according to Lindenblad, radiation took place in other directions outside of the plane.

The purpose of the second Lindenblad patent in suit was to improve on the first Lindenblad patent in suit by concentrating radiation not only in the plane of the wires, but along the axis of the V into which the two wires are formed, which constitutes the bisector of the angle formed by the wires.

The third Carter patent in suit has as its object to improve on the second Lindenblad patent in suit by achieving an even greater concentration in the plane of the wires along the bisector of the angle by selection of the proper angle between the legs of the V.

The defendant's antennas which are charged with infringement differ radically from the inventions claimed in the three antenna patents in suit. None of them propagate a main lobe of radiation in the place of the wires, but intentionally propagate their main lobes of radiation at an angle to the plane of the wires for the deliberate purpose of utilizing the reflective effect of the Heaviside layer.

None of the defendant's antennas tilts the wires at an angle to the horizontal to accomplish this, but that alone is contemplated by the patents in suit for that purpose. For the same reason, none of defendant's antennas propogates its main lobe of radiation on the axis of the system, or along the bisector of the angle between the legs of the V.

None of defendant's antennas (with the exception of antenna No. 8) uses radiator wires an integral number of half wave length long, as is specified by all three of the antenna patents in suit, but the defendant's radiator wires depart from the half wave length measure as far as it is possible so to do. This is done for the deliberate purpose of creating standing waves on a portion of the transmission line feeding the antenna, as is necessary in order to tune the antenna and effect impedance matching in defendant's system.

None of defendant's antennas utilize an angle between the legs of the V that is dependant upon the Carter formula as well as the Abraham formula, and this is especially true of defendant's aforesaid antenna No. 8, but also true as to the remainder of the antennas, as Carter's formula is predicated upon the precise relation between the angle of propagation and the exact length of the antenna wires, which must be an integral number of half wave lengths in order to be accurate.

In substance, all of the antenna patents in suit present merely a theoretical application of antenna wires in free space, whereas all of the defendant's are intentionally designed to co-operate with ground effect, which effect not only is not contemplated by any of the patents in suit, but is contradictory to the description and claims thereof.

The first Lindenblad patent, No. 1,884,006:

This patent is directed to the use of staggered parallel wires as an antenna.

No evidence was offered which showed the adoption of this type of antenna by any one, and defendant does not use parallel or staggered wires. To attain the stated objects of the patent by the use of parallel wire antennas there must be proper spacing between the wires. This fact is expressly recognized by the patent which expressly misdirects with respect thereto. And the patent is expressly directed to obtain propagation of waves in the plane of the wires.

Figs. 1 and 2 of the drawings of the patent illustrate the well-known single wire antenna which is characterized by the patent as "wasteful of energy."

The patentee in the specification says one object of his invention is "to reduce the conical radiation so that it will consist only of concentrated lobes having axes in one plane. This is accomplished by providing two collaterally spaced substantially parallel linear conductors which are long, relative to the working wave length, and which are coupled in phase opposition."

This arrangement is shown in Fig. 3, and on comparison with Fig. 2, it will be seen that the conical radiation has been reduced by means of the parallel wire arrangement, to four principal lobes of radiation 30, 34, 32, and 36, all in the same plane of the wires.

The patent also states: "This arrangement, too, is wasteful of energy, and it is a further object of my invention to strengthen the radiation in one pair of opposite critical directions, while weakening the radiation in the conjugate pair of opposite critical directions, which I do by staggering the pair of wires, longitudinally, so that their ends make an angle with the transverse axis of the antenna equal to the critical angle of radiation, that is, the angle which the principal lobes of the radiation pattern of the antenna make with the longitudinal axis of the antenna."

Fig. 4 of the drawings shows this arrangement, and on comparison with Fig. 3, it shows that two additional lobes in the same general direction have been joined, still in the plane of the wires. Only by staggering the ends of the parallel wires and spacing them from each other a proper distance can this effect be produced. A bidirectional antenna is secured in this way. To make the system unidirectional, as illustrated in Fig. 5, for example, a "reflector" is used that is a duplication of the staggered parallel wires, but spaced therefrom a proper distance in the manner taught in the first Carter patent, for example, which was admittedly old even at the date of Carter's first application 1923.

Every objective attained or sought to be attained thereby is dependant upon the proper spacing between parallel wires.

In Fig. 4 is illustrated the subject-matter of spacing between the parallel wires where it is shown that the wires are spaced from each other a distance determined by

the formula recited, which distance is measured in the direction of radiation. This was an entirely erroneous teaching, and was not merely a draftsman's error or oversight, as the mistake was carried into the text also where the erroneous is thrice supported in the specification.

Claims 23, 24, 25, 26, and 27 are in suit, and claim 23 which may be taken as typical reads as follows: "23. A directional antenna comprising a pair of long linear wires connected at adjacent ends to high frequency apparatus and having standing waves of opposite instantaneous polarity thereon, said wires being several wave lengths in length and extending away from and on one side only of said adjacent ends."

All of the claims in suit must necessarily be read in the light of the disclosure of the patent, that is, they must be read as being directed to cover staggered, parallel wires employed as radiators from which radiation is effected in the plane of the wires. Unless the claims be so interpreted, they would fail to describe the invention of the patent as specified therein.

All of the claims in suit contain the limitation that the wires are "several wave lengths in length," and claims 25, 26, and 27 expressly recite that the wires are arranged so that radiant action occurs in a direction making the same angle with each conductor, which means that the wires are parallel to each other.

■ A consideration of the evidence leads me to the conclusion that regardless of the validity of the patent, none of the defendant's antennas infringes the first Lindenblad patent in suit for the following reasons:

None of the defendant's antennas radiates waves in the plane of the wires, but in all of them the main lobe of radiation is at an angle to the plane of the wires.

None of the defendant's radiating wires or conductors is arranged parallel to each other, but all of defendant's antenna wires are in the form of a V.

None of defendant's antennas is longitudinally staggered with respect to one another in order to obtain bidirectional effect, but the open ends of the legs of defendant's V terminate opposite each other.

None of defendant's bidirectional antennas employ a pair of wires spaced from each other in accordance with the spacing formula, whether correctly applied or incorrectly applied as in the first Lindenblad patent in suit, but defendant's single V antennas are bidirectional without using this feature.

None of defendant's antennas employ, in order to obtain unidirectivity, a reflector of parallel spaced staggered wires, but employs as its reflector another V-antenna.

Defendant's antennas differ so radically in structure and principle of operation from those of the first Lindenblad patent in suit that if the claims in suit of that patent be even literally readable on defendant's antenna systems and so interpreted as to include within their scope defendant's antennas or any of them, the claims would not define Lindenblad's invention. The claims do not literally read on defendant's antennas, as there is of necessity imported into the claims properly spaced parallel staggered wires, without which the directive system claimed in each of the claims in suit could not be obtained.

The first Lindenblad patent in suit is not infringed.

The second Lindenblad patent, 1,927,522:

This patent is for a traveling wave antenna. No evidence was offered of any adoption or use thereof by anyone. All of defendant's antennas charged to infringe are of the standing wave type. This patent likewise specifically directs and limits its disclosure to the propagation of the main lobe of radiation in the plane of the wires. Defendant does not employ any antenna in which the main lobe of radiation is in the plane of the wires. This patent is not directed broadly to a V type antenna, as it is wholly inadequate of disclosure because the proper angle between the antenna wires constituting the legs of the V is not given, and no means are disclosed by the patent to enable one to determine the proper angle. Only with proper angles could the stated objects of the patent be attained, that is, that the main lobe of radiation would be in the plane of the wires and on the bisector of the angle between the legs of the V.

The patentee in his specification says: "It is an object of my invention to provide an exceedingly simple form of short wave antenna which will operate over a considerable range of frequency, and a further object of my invention is to provide an antenna with which a transmission line may be coupled without the use of intermediate impedance matching devices."

None of defendant's antennas is designed to "operate over a considerable range of frequency," but all of them employ

"intermediate impedance matching devices." The patentee then states that the stated object is accomplished by the utilisation of traveling waves. All of defendant's are of the standing wave type.

The second Lindenblad patent specifies that the principal radiation occurs in the plane of the wires and says: "The desired radiation takes place in the direction of the axis of the pair of conductors."

Again reference is made to "radiation in the direction of the antenna."

No instruction is given in the specification as to the proper angle between the legs of the V, and such instruction is necessary, because without the proper angle maximum radiation in the direction of the bisector of the angle would not occur, as at certain values of the angle, zero radiation on the line of the bisector is obtained.

Claims 9, 10, 19, and 23 are in suit.

Claim 9 reads as follows: "9. In combination, a two conductor transmission line excited in phase opposition, and an antenna extending longitudinally in the direction of desired radiant action comprising an open ended pair of conductors which at one end are spaced at the spacing of the transmission line and are coupled thereto, and which gradually diverge to a much wider spacing at their open ends."

Claim 10 also defines the antenna as "extending longitudinally in the direction of desired radiant action."

These claims are therefore expressly limited to radiation in the plane of the wires.

Claim 19 expressly recites that radiant action "occurs predominately along the direction of the axis of the conductor system."

Therefore this claim is also expressly limited to the principal radiation being in the plane of the wires.

Claim 23 expresses the same thought, but in different language, where it expressly provides that radiant action "occurs predominately in a direction making equal angles greater than zero degrees," with reference to the conductors.

As hereinbefore stated, none of defendant's antennas are of the traveling wave type, and therefore none of the defendant's antennas embody the alleged invention of the second Lindenblad patent in suit irrespective of the terminology of the claims.

As hereinbefore pointed out, the claims in suit show that they are by their terms expressly limited to radiation in the plane of the wires.

None of the defendant's antennas so operate.

Regardless of the validity of the patent, the second Lindenblad patent is not infringed.

The third Carter patent, No. 1,974,387:

This patent is also directed to the V type antenna, and the asserted contribution of the patent over the second Lindenblad patent consists of supplying the necessary formula for determining the proper angle between the antenna wires constituting the legs of the V in order to obtain maximum radiation in the plane of the wires along the line of the bisector of the angle between the legs of the V.

There is no evidence in this case that the defendant or any one else has adopted or practically used the antenna of this type where radiation is effected in the plane of the wires on the line bisecting the angle between the legs of the V. Defendant deliberately and intentionally propagates its main lobe of radiation at an angle to the plane of the wires.

The mathematical formula advanced as the invention of the patent was copied from the prior art formula of Abraham which had been used by engineers for determining the identical angle for which it was employed by Carter. This formula as employed by Abraham and Carter gives merely theoretical results, but was advanced by both of them as affording means for determining the angle between the principal lobe of radiation and the wire from which it radiates in free space, when the wire is an integral number of half wave lengths long. Defendant does not use antenna wires an integral number of half wave lengths long (with the exception of antenna No. 8), and antenna No. 8, together with all of the other antennas of defendant, charged herein to infringe, do not employ the angle prescribed by the formula. Defendant does not propagate its main lobe of radiation in the plane of the wires or on the bisector of the angle of the V. Due to the departure from the Carter patent in the respects enumerated and by reason thereof in all of defendant's antennas, here charged to infringe, defendant obtains material advantages and increased efficiency in that material increase in radiated power is obtained.

That main radiation is desired and obtained by the patentee in the plane of the wires, and on the line bisecting the angle of the V formed thereby, appears from the specification which says: "It is proposed to place these wires at an angle with respect to each other so that principal radiation takes place along the bisector of the angle" (p. 1, l. 22), and again that the wires are disposed "at an angle such that the principal radiation occurs along the direction of the bisector of the angle" (p. 1, l. 79).

There will also be found on page 2, lines 32, 34, 39, 44, 101, and on page 3, lines 40, 74, 84, 116, and 131 references of similar character.

The Abraham formula for determining the angle between the legs of the V is copied in the specification.

The application as originally filed was expressly limited in the specification and claims to antenna wires an integral number of half wave lengths long and the Abraham formula would correctly apply thereto.

During the prosecution of the case, and subsequent to the answer of the defendant filed in this suit, the specification was amended by the insertion of the following: "By the term 'plurality of wave lengths,' or 'several half wave lengths,' it is not intended that the wires so described shall necessarily be an exact or approximate integral number of such lengths, unless so specified, but rather that each of the wires so described shall be sufficiently long to include the lengths specified" (p. 4, ll. 35–42) and the claims were amended correspondingly and in that form the patent issued. The object was to include an antenna of any length.

The claims in suit are claims 1, 2, 3, 4, 10, 12, 15, 16, 28, 34, 35, 36, 38, and 40.

Claims 1–4 are directed merely to the use of a V-antenna with its reflector.

Claims 1–3 are expressly limited to the radiant action being "predominently along the direction of the bisector of the angle formed by the conductors," and claims 1–4 were amended subsequent to defendant's answer in this case with reference to the length of the wires so as to "include" substantially a plurality of half wave lengths, instead of being expressly limited to an integral number of half wave lengths as they were theretofore drawn.

Claims 10, 12, 15, and 16 all, at least, include as part of the invention the Abraham formula in some form.

Claim 28 is directed to the reflector feature and contains the amendment as to the length of the wires of the V made after answer in this suit.

Claims 34, 35, and 36 are directed to the use of impedance matching devices with a V type antenna. They are expressly limited to radiation on the bisector of the angle, and include the belated amendment as to the length of the wire.

Claim 38 differs from claim 1 only in more generally defining the spacing of the reflector, and contains the belated amendment as to the length of the antenna wires.

Claim 40 is directed to the reflector feature with a V-antenna and is expressly limited to radiation along the bisector of the angle between the legs of the V.

Defendant does not radiate in the plane of the wires, whereas the third Carter patent in suit is expressly limited as to some claims, and impliedly as to all thereof, to radiation in the plane of the wires, and, in fact, on the line bisecting the angle between the legs of the V.

Defendant does not employ antenna wires an integral number of half wave lengths long (with the exception of antenna No. 8).

The defendant's antenna wires in Nos. 1, 5, and 7 are approximately 6¼ wave lengths long, in Nos. 2 original, 3 original, 4, 6, 8, and 11 they are approximately 7⅜ wave lengths long and in No. 10 they are approximately 7¼ wave lengths long.

Plaintiff contends that the third Carter patent is the final development of the structure disclosed in the two Lindenblad patents in suit, and it is alleged that the details of defendant's antennas come nearer to the third Carter patent than to any other patents in suit. Let us now compare defendant's practices with the teachings of the third Carter patent in suit.

The teachings of the third Carter patent in suit in so far as the length of the antenna wires is concerned are the same as those of the two Lindenblad patents in suit.

The description and claims of the third Carter patent in suit as originally filed and as they stood until August, 1934, that is subsequent to the commencement of this action, dealt only with antenna wires a plurality of half wave lengths long. Claim 1, originally numbered 5, defined the length of the conductors as "substantially a plurality of half wave lengths long," and was amended August 4, 1934, to read: "Of a

length including substantially a plurality of half wave lengths."

The original language covered only antenna wires a plurality of half wave lengths long, but by the broadening amendment of August, 1934, it included all antennas irrespective of their lengths as long as they were at least one wave length long.

In the same amendment the same change was made in claims 6, 7, 8, 9, 10, 25, 31, 32, 33, 34, 39, 40, 43, 44, 45, 46, 47, 48, 49, and 50. Claims in suit 1, 2, 3, 4, 28, 34, 35, 36, and 38 were so amended. And the specification was amended as hereinbefore quoted.

The specification as filed, and as it stood at the time of the commencement of the present action, did not contain any such language as appeared in the amendment, and the claims as they then stood would have excluded defendant's antennas.

I do not agree with plaintiff's contention that the original specification warranted such extension of Carter's disclosure.

After the refusal of the amendment of July 16, 1934, which included the amendment to the specification hereinbefore quoted, and after an oral interview with the Examiner, the specification and claims were amended as hereinbefore quoted by the amendment of August 4, 1934.

■■■ The expansion of the application was improper. De Forrest Radio v. General Electric Company, 283 U.S. 664, 51 S. Ct. 563, 75 L.Ed. 1339.

The disclosure and the claims were broadened, not only contrary to their original terminology, but to their spirit as well. Carter throughout the specification dealt with conductors measured in half wave lengths or full wave lengths, and did not mention conductors a multiple of a quarter wave length long, or conductors of greater or less than half wave lengths. The two Abraham formulæ are applicable only to wires an exact number of half wave lengths long. It is true that in Fig. 12 of the patent Carter drew a smooth curve which apparently includes all lengths of wire between the half wave lengths, but I am convinced that neither Carter's empirical formula nor Fig. 12 make a correct showing of what happens when the wires are other than exact multiples of half wave lengths.

Another statement of the specification which plaintiff contends indicates that Carter had in mind antenna lengths which were not integral multiples of half wave lengths refers to "open-ended wires of any finite length" (p. 1, ll. 29–34), and does not refer to wires an odd or an even number of half wave lengths long.

Even this passage was added in the amendment of May 2, 1934, and after the commencement of this action.

■■■ Before all of the amendments were offered, complete and detailed information of defendant's antenna systems was obtained by the plaintiff through litigation previously instituted on the first four patents in suit, and by those amendments the plaintiff attempted to mold the third Carter patent both as to disclosure and claims, to cover defendant's antenna systems.

This could not lawfully be done. Lopulco Systems, Inc., et al. v. Bonnot Co. et al. (C.C.A.) 24 F.(2d) 510.

As I have hereinbefore stated, defendant's V antennas radiate at an angle to their planes and to their bisectors, and this is contrary to Carter's teachings. The third Carter patent in suit deals only with horizontal radiation from an antenna in the plane of the wires and the bisector of the angle. There is no illustration of ground or its effect in the patent in suit. This is true even though in Fig. 7 of the patent in suit the legend appears:

"Power Distribution
"Vertical Plane
"Ground Effect Neglected"

This casual reference to ground does not show that Carter recognized ground effect, as no mention is made thereof anywhere in the specification, nor is there any explanation therein of what was meant by the legend. In any event, the casual reference to "ground" contained in Fig. 7 is with reference to power distribution in the vertical plane, and with that this litigation is not concerned. Fig. 6 of the patent in suit makes no reference to ground effect, and that relates to power distribution in the horizontal plane, and with that this litigation is specifically concerned. I am convinced that the ground effect is without significance with respect to the invention purported to be shown, described, and claimed in the third Carter patent in suit.

To distinguish his invention from the second Lindenblad patent in suit, Carter amended his claims, and added new claims.

The Lindenblad patent does not show the relation between the angle and exact length of the antenna as Carter teaches, and in the claims as amended he defines the pre-

cise relation between the angle and the length of the antenna. The defendant does not use the precise relation of the Carter patent, and, in view of the Lindenblad patent, Carter could not obtain claims to cover a range of angles. All of defendant's antennas differ from the angle specified by Carter, and while the difference is not great, it is as great as the difference between Bruce (of the prior art) and Carter. If defendant's antenna No. 8, where the angle is differed 10 per cent. from Carter, infringes, then Lindenblad anticipates.

■■■ Regardless of the validity of the patent, the third Carter patent in suit is not infringed.

Neither time nor space warranted a detailed consideration in this opinion of each of the contentions of the plaintiff, but they have all received consideration, and I have stated my conclusions.

There are, however, certain contentions of plaintiff which I will briefly consider.

Defendant did not copy the antennas and instrumentalities of the patents in suit, as contended by plaintiff, as all of the patents in suit, with the exception of the first Carter patent, issued subsequent to the erection of the defendant's antennas charged to infringe, and as I have found with respect to the first Carter patent defendant does not infringe.

■■■ None of the patents in suit are pioneer patents, as contended by plaintiff, and the record does not show that they have been employed by any one; even the plaintiff's own commercial structures do not follow the teachings or employ the instrumentalities shown, described, or claimed in any of the patents in suit, as I have interpreted the same. Therefore the patents in suit are not entitled to a construction of any broader scope than is clearly required to be given. Darnell Potato Products Co. v. Snelling (C.C.A.) 38 F.(2d) 788, 789; Stewart-Warner Corporation v. Jiffy Lubricator Co. (C.C.A.) 81 F.(2d) 786, 793.

Plaintiff makes a point that defendant offered no proof that defendant's antennas were the result of independent investigation and development by defendant, but in view of defendant's contention as to the patents in suit, such proof would not be expected; the fact is, however, that defendant's systems are radically different from the patents in suit, in structure, principle of operation and instrumentalities, and were designed and constructed to secure and did secure greater radiation, by reason of such difference, than could be obtained by the patents in suit.

Plaintiff contends with reference to the third Carter patent in suit that the invention was of an antenna not a formula, but, even though that be so, the invention was of an antenna, the proper angle between the antenna wires constituting the legs of the V of which was to be determined by the formula supplied.

None of the claims in suit of any of the patents in suit are infringed by any of the antennas or antenna systems of the defendant charged in this suit to infringe.

A decree may be entered in favor of the defendant against the plaintiff dismissing the bill of complaint herein with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the rule 70½ of the Equity Rules (28 U.S.C.A. following section 723), and rule 11 of the Equity Rules of this court.