**Application of James R. DIEHR, II, and Theodore A. Lutton.**

**Appeal No. 79–527.**

United States Court of Customs and Patent Appeals.

Aug. 9, 1979.

Rehearing Denied Oct. 18, 1979.

Robert E. Wickersham, San Francisco, Cal. (Owen, Wickersham & Erickson, San Francisco, Cal.), attys. of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Thomas E. Lynch, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and COWEN,[*] Senior Judge.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claims 1–11, all claims in appellants' application serial No. 602,463, filed August 6, 1975, entitled "Direct Digital Control of Rubber Molding Presses."[1] The claims have been rejected under 35 U.S.C. § 101 as being drawn to nonstatutory subject matter. We reverse.

### The Invention

Appellants claim a method for operating molding presses used in the manufacture of rubber articles. More specifically, appellants' method produces molded articles which are properly cured, in that their method insures that the articles remain in the press for a period of time sufficient to insure that they are not overprocessed or underprocessed.

According to appellants' specification, achieving a perfect cure depends upon several factors, including the thickness of the article to be molded, the temperature of the molding press, and the amount of time that the article is allowed to remain in the press. These factors are related by the Arrhenius equation,[2] which appellants acknowledge has always been used to calculate the cure time in rubber molding processes.

From a reading of appellants' specification and their brief before this court, it appears that they characterize their contribution to the art as residing in the step of repeatedly or constantly measuring the actual temperature in the mold. These temperature measurements are then used to calculate the cure time by repeatedly using the Arrhenius equation to arrive at the actual cure time, rather than by the conventional method which uses a single calculation using that equation based upon the temperature nominally set by a thermostat which controls the heater in the molding press. The conventional method is inherently inaccurate because the temperature value used in the equation is rarely, if ever, the true temperature in the mold environment.

Claim 1 is representative and reads:

1. A method of operating a rubber-molding press for precision molded compounds with the aid of a digital computer, comprising:

providing said computer with a data base for said press including at least,

natural logarithm conversion data (ln),

the activation energy constant (C) unique to each batch of said compound being molded, and

a constant (x) dependent upon the geometry of the particular mold of the press,

initiating an interval timer in said computer upon the closure of the press for monitoring the elapsed time of said closure,

constantly determining the temperature (Z) of the mold at a location closely adjacent to the mold cavity in the press during molding,

constantly providing the computer with the temperature (Z),

repetitively calculating in the computer, at frequent intervals during each cure, the Arrhenius equation for reaction time during the cure, which is

wherein ln v is the natural logarithm of v, the total required cure time; C is the activation constant, a unique figure for each batch of each compound being molded, determined in accordance with rheometer measurements of each batch; Z is the temperature in the mold; and x is a constant dependent on the geometry of the particular mold in the press.

A rheometer is an instrument to measure flow of viscous substances.

[*] The Honorable Wilson Cowen, United States Court of Claims, sitting by designation.

1. This application is a continuation of application serial No. 472,595, filed May 23, 1974, now abandoned, which is a continuation-in-part of application serial No. 401,127, filed September 26, 1973, now abandoned.

2. The Arrhenius equation is expressed as follows:

$$\ln v = C\ Z + x$$

$$\ln v = C Z + x$$

where v is the total required cure time,

repetitively comparing in the computer at said frequent intervals during the cure each said calculation of the total required cure time calculated with the Arrhenius equation and said elapsed time, and

opening the press automatically when a said comparison indicates equivalence.

The other claims are similar. Claim 11 does not recite the use of a computer to do the calculating, but, as we shall explain, we find this fact to be of no moment.

### The Rejection

The examiner rejected the claims because he believed that *the only non-conventional claim steps* "define a computer program for taking repeated temperature measurements from the mold and calculating cure time in response to said measurement data." On this basis, he decided that appellants were *claiming* a computer program, "subject matter [to] which. the Supreme Court has declined to extend patent protection absent a considered action by Congress."

The board agreed with the examiner. It dismissed appellants' argument that no computer program was disclosed in the specification, citing an admission to the contrary made by appellants during prosecution.[3] The board was aware of the then newly announced Supreme Court decision in *Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451, 198 USPQ 193 (1978) (hereinafter *Flook*), and made use of it in support of its decision to affirm the rejection.

The board, in its examination of claim 1, perceived the only "non-programming" step to be "constantly determining the temperature (Z) of the mold," and stated that according to appellants' specification, in "Background of the Invention," it was old in the art. The board analyzed the other steps recited in claim 1 as being directed to gathering data for use in the recited formula or as "post solution activity," which, according to *Flook*, would not render the claims statutory. The board concluded that appellants' system involves an algorithm solving a mathematical problem in the sense involved in *Flook*.

After similarly analyzing the remainder of the appealed claims, the board concluded as follows:

It is our view that the only difference between the conventional methods of operating a molding press and that claimed in appellants' application rests in those steps of the claims which related to the calculation incident to the solution of the mathematical problem or formula used to control the mold heater and the automatic opening of the press.

We think that *appellants' contribution, regardless of claim format,* is a computer program of the character which the USSC has indicated, in both Flook and Benson,[4] is outside the bounds of 35 USC 101. [Emphasis ours.]

### Appellants' Arguments

Appellants argue that they have *claimed a process* which is basically chemical and physical in nature, not a computer program

---

**3.** Appellants have consistently argued that they have not disclosed a computer program in their specification, but in a preliminary amendment, filed August 6, 1975, with their application, they stated:

The original affidavit by applicants under Rule 132 disclosed that the flow sheet [Figs. 3A and 3B of the specification] is itself basically a program and that the only difference between the flow sheet as a program and the form taken by the program when it gets into the computer is translation into a suitable computer language * * *.

An affidavit of the applicants, dated July 18, 1975, states:

THAT the program shown in the flow sheets, Figs. 3A and Fig. 3B, is actually a "program" so far as the programmer is concerned and that to apply the "program" * * to a computer merely involves translation of the symbolic flow sheet into [a suitable computer language].

Thus, by their own admission, it is clear that appellants have disclosed a computer program. However, this fact, by itself, has no significance in the § 101 inquiry, as we shall explain, infra.

**4.** *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273, 175 USPQ 673 (1972).

or the type of mathematical algorithm involved in *Flook.* They do, however, as they must, acknowledge that calculations according to a recited formula are explicitly *involved in* the claimed process.

They strenuously take issue with the factual conclusion made by both the examiner and the board that their step of continuously measuring the temperature in the mold cavity is old in the art. They attribute this error to a misreading of their specification and assert that they are the first to employ this step in the molding process.

Appellants also say that the PTO has erred by dissecting their claims into what the PTO considers to be novel and non-novel elements in order to wrongfully conclude that they are claiming a computer program. They assert that the Supreme Court has never placed a blanket prohibition on the patenting of computer programs and, consequently, that the labeling of an invention as a computer program is not a proper method by which to reject a claim under § 101.

Finally, they argue that there is no prohibition on the patenting of all inventions which involve the use of a computer and that their invention, while it does involve the use of a mathematical formula, does not claim the mathematical formula in a non-statutory manner. They say that their claims, as entireties, do not define methods of solving a mathematical problem and are statutory under this court's test applied in *In re Johnson,* 589 F.2d 1070, 200 USPQ 199 (CCPA 1978).

OPINION

■ A claim drawn to a process or method does not depend for its validity under 35 U.S.C. § 101 on whether a computer is involved. If the claim is drawn to subject matter, *which is otherwise statutory,* it does not become nonstatutory merely because a computer is involved in its execution. Thus, the fact that it may be said that an invention is drawn to a computer program or involves a computer is an observation which does nothing to aid in the determination of compliance with § 101. *In re Gelnovatch,* 595 F.2d 32, 36–37, 201 USPQ 136,

141 (Cust. & Pat.App.1979); *In re Johnson,* 589 F.2d 1070, 1081, 200 USPQ 199, 210–11 (Cust. & Pat.App.1978); *In re Chatfield,* 545 F.2d 152, 155, 191 USPQ 730, 733 (Cust. & Pat.App.1976). Therefore, any rejection which is based solely on the determination that a computer or computer program is involved is insupportable because it is overly broad and must be reversed as being without basis in the law.

The Supreme Court, in the two instances in which it has addressed itself to the § 101 issue in cases where computer-related inventions are involved, has not said anything to the contrary. Our view is not in any way inconsistent with these precedents.

In *Gottschalk v. Benson,* supra n. 4 (hereinafter *Benson*), the Court addressed a claimed method for converting binary coded decimal (BCD) numbers to equivalent pure binary numbers. The Court observed that the claims were "not limited to any particular art or technology, to any particular apparatus or machinery, or to any particular end use. They purported to cover any use of the claimed method in a general-purpose digital computer of any type." 409 U.S. at 64, 93 S.Ct. at 254, 175 USPQ at 674. The Court determined that the claimed method was a mathematical algorithm, i. e., a "procedure for solving a given type of mathematical problem," and further, that "The mathematical procedures can be carried out in existing computers long in use, no new machinery being necessary. And, as noted, they can also be performed without a computer." *Id.* at 65, 67, 93 S.Ct. at 255, 175 USPQ at 674, 675.

The Court reviewed long-standing precedent to the effect that while an abstract principle or idea, or a scientific truth, or its equivalent mathematical expression is nonstatutory, an invention created from the *application* of such a truth or useful *structure* created therefrom is statutory.

The Court then proceeded to hold Benson's invention to be nonstatutory with the following statements (*Id.* at 71–72, 93 S.Ct. at 257, 175 USPQ at 676, emphasis ours):

We do not hold that no process patent could ever qualify if it did not meet the requirements of our prior precedents. *It is said that the decision precludes a patent for any program servicing a computer. We do not so hold.* It is said that we have before us a program for a· digital computer but extend our holding to programs for analog computers. We have, however, made clear from the start that we deal with a program only for digital computers. It is said we freeze *process patents* to old technologies, leaving no room for the revelations of the new, onrushing technology. *Such is not our purpose.* What we come down to in a nutshell is the following.

*It is conceded that one may not patent an idea. But in practical effect that would be the result if the formula for converting BCD numerals to pure binary numerals were patented in this case. The mathematical formula involved here has no substantial practical application except in connection with a digital computer, which means that if the judgment below is affirmed, the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself.*

From the Court's holding itself, as well as from its discussion of the applicable legal principles, it is clear that the claims were held to be fatally deficient under § 101, *not because a computer program was being claimed*, but because a *mathematical formula* or algorithm per se was being claimed. Important to the Court's reasoning was the fact that the formula involved dealt with the binary radix, or base two number system. The only practical and significant application of the binary system in the real world is in connection with digital computers, which operate in the binary system—a system easily represented electrically by the "on" and "off" or conducting and nonconducting states of the circuit elements comprising the computer. Seen in this light, it is apparent that the claim would, in effect, dominate all practical and significant uses of the formula. Thus, the Court viewed the claim as directed to the scientific truth itself, rather than to an *application* of, or *structure* created with the aid of, the scientific truth. This belies any notion that the claims were held to be nonstatutory because drawn to a computer program per se.

*Parker v. Flook*, supra, presented the Supreme Court with a similar situation. The claims were drawn to a method for updating an alarm limit used in petroleum refining processes. The Court determined that the claims were essentially directed to the use of a new *mathematical formula* in the conventional process of updating alarm limits. According to the majority, "Respondent's application [sic, claimed invention] simply provides a new and presumably better method for calculating alarm limit values." 437 U.S. at 594–95, 98 S.Ct. at 2528, 198 USPQ at 199 (emphasis ours). As in *Benson*, the Court in *Flook* was simply saying that the claims were an attempt to patent *the scientific truth itself*, rather than an application of the truth or a structure created by its use. "[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." 437 U.S. at 595, 98 S.Ct. at 2528, 198 USPQ at 199, *quoting In re Richman*, 563 F.2d 1026, 1030, 195 USPQ 340, 343 (Cust. & Pat.App.1977).

The Court's holding in *Flook* was "very simply" stated: "[O]ur holding today is that a claim for an improved *method of calculation*, even when tied to a specific end use, is unpatentable subject matter under § 101." *Id.* 437 U.S. 584 n. 18, 98 S.Ct. 2528. (Emphasis ours.) As in *Benson*, this holding has nothing to do with computers or computer programs per se.

This, as we perceive it, is the direction which has been given us by the Supreme Court. Until the Court directs us otherwise, we continue to disagree with the notion that a claim may be rejected as nonstatutory merely because it *involves* a computer program or is computer-related. As far as we are concerned, claims may be rejected under § 101 because they attempt to embrace *only* a mathematical formula,

mathematical algorithm, or method of calculation, but not merely because they define inventions having something to do with a computer.

In view of the foregoing, to the extent that the examiner's position is based upon the mere alleged presence of a computer program in appellants' claims, it is without basis in the law and cannot be sustained. The board, however, in addition to stating the inadequate reason that a computer program is involved, analyzed the claims to determine what steps in the process were old or conventional and apparently ignored such steps, confining its consideration to the nature of what it deemed to be "appellants' contribution." It then found that contribution to be a "computer program" relating to a calculation incident to the solution of a mathematical problem or formula used to control the opening of the press, and, for that reason, held the claims to be drawn to nonstatutory subject matter under *Flook* and *Benson*. We wish to make clear that this analysis is the only basis upon which we are reviewing the rejection, and that, but for this reasoning, we would be constrained to summarily reverse or remand this case to the board for an adequate analysis. *See In re Phillips*, 593 F.2d 1021, 201 USPQ 257 (Cust. & Pat.App.1979).

Appellants and the PTO have locked horns over whether the step of continually measuring the temperature in the mold cavity is old in the art. While we are inclined to agree with appellants that the record is devoid of any evidence that *this step* was ever performed by persons other than appellants,[5] we fail to see what relevance this issue has to the § 101 inquiry. Considerations of novelty and obviousness have no bearing on compliance with § 101. *In re Bergy*, 596 F.2d 952, 960–61, 962–63, 201 USPQ 352, 361, 362 (Cust. & Pat.App.1979); *Nickola v. Peterson*, 580 F.2d 898, 906–907, 198 USPQ 385, 395–96 (6th Cir. 1978). Thus, the fact that certain limitations in a claim may be novel and certain others may be old is irrelevant to the outcome of this case.[6] The focus of the inquiry should be whether the claim, *as a whole*, is directed essentially to a method of calculation or mathematical formula. No one step or subgroup of steps determines whether the entire claim defines statutory subject matter. *Flook*, 437 U.S. at 594 n. 16, 98 S.Ct. 2522, 198 USPQ at 199 n. 16; *In re Chatfield*, 545 F.2d at 158, 191 USPQ at 738. We are concerned only with what *entire* claims define and with whether that falls within § 101.

We turn now to a consideration of the claims on appeal. Appellants attach significance to the fact that claim 11, unlike the remaining claims, does not anywhere recite a computer. In light of our foregoing discussion regarding § 101, we do not find either the presence or absence of computer-related recitations in a claim to be of any significance. If the claim is drawn to a mathematical algorithm, formula, or method of calculation, it is nonstatutory whether it recites that a computer, an abacus, or a pencil and paper are used to make the calculations. The statutory nature of a process or method does not depend, under § 101,

5. The fact that a thermostat has been used to control the mold heater does not mean that the mold temperature has been continually *measured*. A thermostat reacts to only one temperature—the one to which it has been set. It is incapable of discretely recognizing the existence of any other definite temperature, and, hence, is incapable of *continually measuring* the temperature of the environment in which it has been placed; it merely knows whether the actual temperature is above or below the set point. This can hardly be called temperature *measurement*.

6. Although in *Flook* the Supreme Court assumed the equation of the claim to be old in the art even though it was not, the holding of that case does not depend on that mode of analysis. Since Flook's claims were held to be directed to methods of calculation, they were nonstatutory *regardless* of whether the equation was new or old. While the Supreme Court in that case may have found that analysis a convenient vehicle to highlight the fact that Flook's actual contribution to the useful arts was his new formula, we do not believe the Court meant to establish that analysis as a general test in determining compliance with § 101, especially when indiscriminately applied to claim limitations generally.

on the means used to carry it out. *In re Gelnovatch*, supra, *In re Johnson*, supra.

■ Since the claims before us directly recite a mathematical formula, namely, the Arrhenius equation, they must be subjected to further scrutiny. The mere presence of a mathematical formula in a claim is not a prima facie ground for holding that claim to be nonstatutory, *Flook*, 437 U.S. at 590, 98 S.Ct. 2522, 198 USPQ at 197; *In re Johnson*, 589 F.2d at 1076 n. 5, 200 USPQ at 206 n. 5, but, for the claim to be statutory, there must be some substance to it other than the recitation and solution of the equation or formula. The formula, as an embodiment of a scientific principle, must be applied in some useful manner in a method or process, *see, e.g., Tilghman v. Proctor*, 102 U.S. 707, 26 L.Ed. 279 (1880) (scientific fact or principle, of which a mathematical formula is one example, used in a chemical process), or be embodied in the design of some useful structure, machine or apparatus, *see, e.g., Eibel Process Co. v. Minnesota and Ontario Paper Co.*, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923) (law of gravity, expressible in mathematical terms, used in design of a paper-making machine).

This court has formulated a two-step test to determine compliance with § 101 of a claim involving mathematics. *In re Freeman*, 573 F.2d 1237, 1245, 197 USPQ 464, 471 (Cust. & Pat.App.1978). Since, under the first step of the test, the determination that the claim involves mathematical calculations has already been made, we proceed to the second step of the test to determine "whether the claim merely recites a mathematical formula or a method of calculation as in *Benson* and *Flook*." *In re Johnson*, 589 F.2d at 1077, 200 USPQ at 207. We conclude that it does not.

■ Each of appellants' claims, *as a whole*, recites a process or method for molding rubber articles. They are an improvement over prior processes in that appellants provide for opening the mold at precisely the correct time rather than at a time which has been determined by approximation or guesswork. It is this feature of the process that *involves* the Arrhenius equa-

tion. The recitation of the equation is not separable from the process in which it is used; it is intimately involved in the process, but the claims are not to the equation. We find these claims to be directly comparable to those involved in *Tilghman v. Proctor*, supra, and *Eibel Process Co. v. Minnesota and Ontario Paper Co.*, supra, in that they involve the employment of a scientific truth to a new and useful end without attempting to control the use of the truth itself. As Mr. Justice Stone, writing for the Court in *Mackay Radio and Telegraph Co. v. Radio Corporation of America*, 306 U.S. 86, 59 S.Ct. 427, 83 L.Ed. 506 (1939), stated (306 U.S. at 94, 59 S.Ct. at 431):

> While a scientific truth, or the mathematical expression of it, is not patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be.

Though he spoke of "structure" the same is true of a process and the reasoning applies with equal force. The claims here at issue are not, as the PTO asserts, directed to an improved method of calculation for the cure time of rubber articles; such a conclusion is only made possible by ignoring the fact that a molding press is recited and operates as the heart of the process. The PTO has separated the claim into old and new elements, ignoring the presence of the old elements in its analysis. Such reasoning is impermissible. The novelty or otherwise of any element or even of all the elements or steps, or of the combination has no bearing on whether the process is encompassed by § 101.

The claims here on appeal are fundamentally different from the claims involved in *Flook*. They recite a process involving the manipulation of apparatus resulting in the chemical and physical change of starting material, the time that the mold remains closed being controlled by a series of calculations using a recited formula. *See In re Deutsch*, 553 F.2d 689, 193 USPQ 645 (Cust. & Pat.App.1977) (claimed methods of operating an entire manufacturing plant system using particular algorithms); *In re Chatfield*, supra (claimed methods of operating

machines in a more efficient manner using particular algorithms). It would be a gross distortion to say that the claims on appeal are directed essentially to calculations. In *Flook*, by contrast, the claims recited nothing but the calculation, coupled with the post-solution activity consisting only of updating an alarm limit to the newly-calculated value. which is merely a new number. Here, the calculation is intimately entwined with the rubber molding process recited. Therefore appellants are not claiming a process for merely generating a new number by a calculation.

Stated as a general proposition, "regardless of claim format" as the board said, one would hardly question that a rubber-molding process falls within the § 101 categories of possibly patentable subject matter, and that is what is claimed. We see no reason why particularizing in claims a more precise way of timing the molding cycle should remove them from the "process" category of § 101. The board erred in ignoring all of the old or conventional steps in the claims. Novelty considerations have no bearing on whether claims define statutory subject matter under § 101.

The decision of the board is reversed.

REVERSED.