In the Matter of the Application of Clarence W. PHILLIPS, Michael P. Eiben, and Harvey T. Morgan, Jr.

Appeal No. 79–511.

United States Court of Customs and Patent Appeals.

Nov. 15, 1979.

James J. Hill, Chicago, Ill., attorney of record for appellants.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents and Trademarks; Thomas E. Lynch, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER, and WATSON,* Judges.

MILLER, Judge.

This is an appeal from a decision of the Patent and Trademark Office ("PTO") Board of Appeals ("board") which affirmed the examiner's rejections of claims 1–17 [1] under 35 U.S.C. § 101 as nonstatutory subject matter and under 35 U.S.C. 112, first paragraph, for lack of an enabling disclosure. We reverse.

## BACKGROUND

*Invention*

The invention relates to computer apparatus and process for preparing a complete set of printed architectural specifications, which describe the various materials and techniques used in constructing a building. Because to a considerable extent such specifications are repetitious or contain a combination of often-used phrases, appellants have made a list of standard phrases, stored the phrases in a digital computer's memory (referred to as the data file), and associated a short, symbolic character with each phrase. To write a specification, a specifier selects the appropriate phrases and marks the corresponding symbolic characters on an order form in the desired sequence. The series of symbolic characters is supplied to the computer, already programmed, which edits the characters for error, selects the

---

* The Honorable James L. Watson of the United States Customs Court, sitting by designation.

1. In application serial No. 168,711, filed August 3, 1971, entitled "Computer System for Generating Architectural Specifications and Project Control Instructions."

phrases associated with each character from the data file, and assembles and prints out the desired specification with a table of contents and a list of any errors. Appellants have thus eliminated the need for complete handwriting of specifications.

Claim 7 is illustrative of the apparatus claims:

7. A system for preparing a printed architectural specification comprising: Specification Data File means including a quantity of predetermined information stored in a data processor memory and divided into individual phrases with predetermined indentation for print-out, said phrases being recallable by means of a Specification Index File means; and a programmed data processor adapted to receive input coded characters representative of a predetermined sequence and outlining of said phrases in said Specification Data File means for preparing an edited input data file free of fatal errors; said data processor being further programmed to print out a set of specifications according to the input code of the specifier from the Specification Data File and said edited input file.

Claim 15 is illustrative of the process claims:

15. A process for preparing an architectural specification comprising: storing recorded signals representative of instruction data on an instruction data file; storing recorded signals representative of a plurality of phrases with associated code on a specification data file, whereby a specifier by writing code may determine the sequence and relation of said phrases; programming a data processor to receive input code representative of a predetermined sequence of said phrases and to check said input code to determine whether it contains any errors which would prevent further processing of said input code and, if not, to prepare an edited input file of said code; programming said processor to process the code on said edited input file and to prepare a printed specification from said specification data file according to the code sequenced by a specifier and to prepare a set of signals on an instruction input file, said last-named signals being correlated with said phrases through said input code; and programming said data processor to operate on said instruction input file to prepare a set of instructions from said instruction data file; said instructions being associated with corresponding data on said printed specification.

*Proceedings Below*

The examiner rejected the claims under 35 U.S.C. § 101[2] as nonstatutory subject matter, explaining the rejection as follows:

There is nothing in the specification to suggest that there is any other substantial practical application [of the invention] except in connection with a digital computer. The Supreme Court of the United States in *Gottschalk v. Benson et al*, 409 US 63, [93 S.Ct. 253, 34 L.Ed.2d 273], 175 USPQ 673 [1972], indicated that a program that has no substantial practical application except in connection with a digital computer is not patentable under 35 USC 101. . . .

The examiner also rejected the claims under 35 U.S.C. § 112, first paragraph,[3] for lack of an enabling disclosure. In response to this rejection, appellants filed a detailed affidavit by Kathleen Hotton, an experienced professor of computer science, which

**2.** 35 U.S.C. § 101 reads as follows:

§ 101. Inventions patentable

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

**3.** 35 U.S.C. § 112, first paragraph, reads as follows:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

states that a computer programmer of ordinary skill in the art would possess sufficient knowledge and skill to write a program code or instructions for accomplishing all of the functions set forth in a flow chart shown in appellants' application after having studied the application file and the accompanying drawings. The affidavit further states that, although it might require considerable time, such a person could perform such a task "with the straightforward application of conventional knowledge and skills in his possession, and without having to exercise undue skill." Nevertheless, the examiner maintained the rejection, explaining that the affiant does not state that the disclosure is sufficient, based on her own ability, and does not give any examples of instructions that would carry out the flow chart functions, but "only speaks about persons in general that would have sufficient knowledge if they had taken an elementary or introductory course in programming and had one or two years of programming experience."

*Board Decisions*

The board affirmed the examiner's rejection under 35 U.S.C. § 101, quoting at length the reasoning of the examiner, including the portion quoted earlier in this opinion.

The board also affirmed the examiner's rejection under 35 U.S.C. § 112, first paragraph, and stated that the proper test concerning sufficiency of a flow chart is:

> Will the programmer find within the four corners of the disclosure at hand enough to allow him to proceed or will it be necessary for him to seek additional instructions from the person who prepared the flow chart?

The board found the following inadequacies in appellants' specification: (1) The proper criteria for "fatal errors" in Figure 7, block 72, are not explained; (2) The criteria for "validity" in Figure 9, blocks 98 and 99, are not given; and (3) The criteria for "specification error" in Figure 14, block 246, are not given. It said that the general statements in the Hotton affidavit failed to shed any light on these inadequacies.

On reconsideration, the board reviewed its decision in light of *Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451, 198 USPQ 193 (1978), and maintained its support of the examiner's rejection under 35 U.S.C. § 101. It reasoned that because the data involved in the invention are stored and manipulated in a computer necessarily in some mathematical form (binary, octal, decimal, or the like) "according to some radix," [4] appellants' process must be considered an *algorithm*, "a procedure for solving a given type of mathematical problem within the meaning assigned to that term in *Benson* and *Flook, supra*." The board also maintained its decision on the section 112, first paragraph, issue, specifically labeling it a new rejection under 37 C.F.R. 1.196(b) in response to appellants' request for reconsideration.

*Remand From CCPA*

This case was originally scheduled to be heard on April 4, 1979, but was removed from the calendar and remanded to the board. The court's per curiam opinion included the following statement (*In re Phillips*, 593 F.2d 1021, 1022, 201 USPQ 257, 257–58 (CCPA 1979)):

> the board's opinion . . . lacks the specifics of a detailed factual analysis of the subject matter as a whole of appellants' invention (see this court's opinion in *In re Johnson*, 589 F.2d 1070, 200 USPQ 199 (CCPA 1978), and *In re Gelnovatch*, 595 F.2d 32, [201 USPQ 136] (CCPA 1979)), which is required to show wherein this court's opinions in *In re Chatfield*, [545 F.2d 152, 191 USPQ 730 (CCPA 1976)], *In re Noll*, [545 F.2d 141,

4. The radix is "the quantity used to define a system of number representation by means of positional notation. It is the radix that is raised to the successive powers, the result then being multiplied by the given digits of the specified number. The radix number also is equal to the number of symbols, that is, character designs or different digits, required for the particular system of number representation. For example, in a radix 10 number system, there are 10 characters; namely, 0, 1, 2, 3, 4, 5, 6, 7, 8, and 9." Weik, *Standard Dictionary of Computers and Information Processing* (rev. 2d ed. 1977).

191 USPQ 721 (CCPA 1976)], *In re Deutsch*, 553 F.2d 689, 193 USPQ 645 (CCPA 1977), *In re Toma*, 575 F.2d 872, 197 USPQ 852 (CCPA 1978), and *In re Freeman*, 573 F.2d 1237, 197 USPQ 464 (CCPA 1978), do not apply to the instant claims and, particularly, wherein the differences between the instant claims and those involved in *Benson* are insufficient to bring those claims within the Supreme Court's disclaimer in *Benson* (repeated in *Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692, 189 USPQ 257 (1976)) that it was not holding that all computer program inventions are unpatentable.

Accordingly, the board was directed to prepare "a supplemental opinion that will provide the specifics of a detailed factual analysis . . . to enable the court to properly consider the appeal . . . ."

*Board's Supplemental Opinion*

In a long opinion which makes an attempt to provide a "detailed factual analysis," the board adhered to its original decision. It said that the antecedent features that provide input data to the data processing means are comparable to the "antecedent steps of establishing values in the equation" referred to in *In re Christensen*, 478 F.2d 1392, 178 USPQ 35 (CCPA 1973), and do not convert the invention to patentable subject matter.[5] It also said that generation of results in the form of a printout is post-solution activity of the type which the Supreme Court, in *Parker v. Flook, supra*, indicated cannot transform an unpatentable principle into a patentable process. The board then considered whether the portions of the apparatus claims (*viz.* data processing means with its attendant files and program means) and of the method claims (*viz.* storing and programming steps), considered in the context of the antecedent and post-solution language of the claims, make the claims, as a whole, statutory.

In its analysis, the board applied the two-step *Freeman* test, namely: (1) determine whether the claim directly or indirectly re-

cites an "algorithm" in the *Benson* (and *Flook*) sense of the term (a procedure for solving a given type of *mathematical* problem); (2) if such an algorithm is recited, then determine whether the claim in its entirety wholly preempts that algorithm. *In re Freeman*, 573 F.2d 1237, 1245, 197 USPQ 464, 471 (CCPA 1978). With respect to the first step, the board essentially repeated the rationale supporting its decision on reconsideration, namely: because a digital computer "operates mathematically, employing numerical quantities according to at least one radix," appellants' claims are directed to an algorithm—"to the solution of a problem, which problem is stated in mathematical terms . . . the solution of the problem being effected mathematically by the computer." The board noted that digital computers operate mathematically in solving problems "even though, to the user, the problem does not appear to be in mathematical form." In applying the second step of the *Freeman* test, it found that, in cost, speed, and accuracy of preparation, the mode of practicing the algorithm has no substantial practical application except in connection with a digital computer. Therefore, the board concluded that appellants' claims wholly preempt an algorithm and are not statutory subject matter under 35 U.S.C. § 101.

OPINION

*Section 101 Issue*

The board's position, in essence, is that because a digital computer "operates mathematically, employing numerical quantities according to at least one radix," all claims directed to computer-related inventions are directed to an "algorithm" within the meaning of that term in *Benson* and *Flook, supra*. Such a position was effectively repudiated by this court in the recent cases of *In re Bradley*, 600 F.2d 807, 811–12, 202 USPQ 480, 484–85 (CCPA 1979), and *In re Diehr*, 602 F.2d 982, 985, 203 USPQ 44, 48–49 (CCPA 1979). *Cf. In re Gelnovatch,*

5. The board also cited *In re Richman*, 563 F.2d 1026, 195 USPQ 340 (CCPA 1977), and *In re*

*Sarkar*, 588 F.2d 1330, 200 USPQ 132 (CCPA 1978).

*supra.* We note that the radix merely defines a system of number representation and does not arithmetically calculate the solution to a mathematical problem.

Our analysis of the claims on appeal reveals no recitation, directly or indirectly, of an algorithm in the *Benson* and *Flook* sense. The board clearly erred in finding that the first step of the *Freeman* test is satisfied. *See In re Toma, supra.*

■ Accordingly, we hold that appellants' claims meet the requirements of 35 U.S.C. § 101.

*Section 112, First Paragraph, Issue*

Appellants' invention includes an error checking feature. They have defined certain errors as "fatal errors" to be those which are so crucial that the process should halt for immediate correction. Other errors, called "specification errors," will permit the program to run, but are printed out after the program has run so that they may be corrected. Appellants' specification implies that "fatal" and "specification" errors other than those illustrated *may* be identified. However, the board and solicitor have interpreted this to mean that other errors *must* be defined in order to write a program, and have concluded that appellants, therefore, have not satisfied the enablement requirement of section 112. This position is not well taken. Appellants have listed the minimum number of errors that must be corrected before the process can function ("fatal errors") and the errors that they desire to have the option of correcting ("specification errors"). Additional errors *may* be identified, but they are not necessary to the invention. Accordingly, we conclude that the appellants have sufficiently described the criteria for "fatal errors" and "specification errors."

■ Another feature of appellants' invention is a validity check on the symbolic characters supplied to the computer. Appellants, by merely stating that a validity check is to be made, have impliedly provided the necessary criteria. They have estab-

lished a list of possible symbolic characters. A validity check of a symbolic character supplied to the computer is made by checking to see whether it matches a character on the list. If a match is made, the character is valid; otherwise, it is invalid. No further criteria are required. Therefore, we hold that the enablement requirement of 35 U.S.C. § 112, first paragraph, is satisfied.

In view of all the foregoing, the board's decision affirming the rejections under 35 U.S.C. § 101 and 35 U.S.C. § 112, first paragraph, are *reversed.*[6]

*REVERSED.*

---

**6.** The PTO has apparently not considered appellants' application for compliance with 35 U.S.C. §§ 102 and 103. Piecemeal examination is to be avoided. 37 C.F.R. 1.104 and 1.105. *See also* MPEP 707.07(g).