RADER, Circuit Judge,
with whom LINN, Circuit Judge, joins, dissenting-in-part and concurring-in-part.
The Constitution of the United States gives Congress, not the courts, the power to promote the progress of the useful arts by securing exclusive rights to inventors for limited times. Art. I, § 8, cl. 8. Yet this court proclaims itself the body responsible for achieving the “right balance” between upstream and downstream innovation. Ante at 1353. The Patent Act, however, has already established the balance by requiring that a patent application contain “a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same.” 35 U.S.C. § 112, ¶ 1 (emphasis added). In rejecting that statutory balance in favor of an undefined “written description” doctrine, this court ignores the problems of standardless decision making and serious conflicts with other areas of patent law. Because the Patent Act already supplies a better test, I respectfully dissent.
I.
The frailties of this court’s “written description” doctrine have been exhaustively documented in previous opinions. See, *1362 e.g., Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 976 (Fed.Cir.2002) (Rader, J., dissenting from denial of rehearing en banc); id. at 987 (Linn, J., dissenting from denial of rehearing en banc); Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1322 (Fed.Cir.2003) (Rader, J., concurring); id. at 1327 (Bryson, J., concurring); Univ. of Rochester v. G.D. Searle & Co., Inc., 375 F.3d 1303, 1307 (Fed.Cir.2004) (Rader, J., dissenting from denial of rehearing en banc); id. at 1325 (Linn, J., dissenting from denial of rehearing en banc); Lizardtech, Inc. v. Earth Res. Mapping, Inc., 433 F.3d 1373, 1376 (Fed.Cir.2006) (Rader, J., dissenting from denial of rehearing en banc); Ariad Pharms., Inc. v. Eli Lilly & Co., 560 F.3d 1366, 1380 (Fed.Cir.2009) (Linn, J., concurring). These earlier writings document the embárrassingly thin (perhaps even mistaken) justifications for the minting of this new description doctrine in 1997 and the extensive academic criticism of this product of judicial imagination. For present purposes I will only recount those frailties of this court’s relatively recent justifications for a doctrine of its own making.
First and foremost, the separate written description requirement that the court petrifies today has no statutory support. As noted, § 112, first paragraph, reads as follows:
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
This language, while cumbersome, is unambiguous. It says that the written descriptions of the invention and of the manner and process of making and using the invention are both judged by whether they are in such full, clear, concise, and exact terms as to enable a person skilled in the art to make and use the invention. The reason for a description doctrine is clear: to ensure that the inventor fully discloses the invention in exchange for an exclusive right. The test for the adequacy of the specification that describes the invention is also clear: Is the description sufficient to enable a person of ordinary skill in the art to make and use the claimed invention? Nowhere does the paragraph require that the inventor satisfy some quixotic possession requirement.
This court, however, calves the “written description of the invention” language out of its context in the rest of the paragraph. In this court’s strained reading, the prepositional phrases that follow apply only to a “written description ... of the manner and process of making and using” the invention, not to a “written description of the invention.” The practical effect of the court’s interpretation is that the written description of the invention contained in the specification need not be full. It need not be clear. It need not be concise. It need not be exact. But see Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed.Cir.2005) (en banc) (“The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in ‘full, clear, concise, and exact terms.’ ”) (emphasis added). And, of course, it need not enable. Instead, it must satisfy a vague possession notion.
To support its reading of the statute, the court relies on a new doctrine of statutory interpretation that it calls “parallelism.” Ante at 1344. Before today, parallelism would have been simply disfavored under the maxim that the law does not use re *1363 dundant language, a maxim that has actually been used by courts before. (Indeed, even the court uses this maxim when it fits its purpose, see ante at 1844-45.) If Congress had intended enablement to test only the sufficiency of the written description of the manner and process of making and using the invention, then it would have simply required “a written description ... of the manner and process of making and using it in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to do so.” Note also that the comma after “it” in the statute as written is meaningless under the court’s interpretation.
Moreover, if “parallelism” is indeed the right test, then it conflicts with the court’s separate argument that the written description of the invention test has been separate from the enablement test since the 1793 Act. A close look at Section 3 of the 1793 Act reveals that the “parallelism” there connects the enablement clause to both written description requirements:
[E]very inventor, before he can receive a patent shall ... deliver a written description of his invention, and of the manner of using, or process of compounding the same, in such full, clear and exact terms ... to enable any person skilled ... to make, compound, and use, the same.
Act of Feb. 27, 1793, 1 Stat. 318, 321-22, ch. 11, § 3 (emphasis added).
In reality, the court simply sidesteps the conflict between its position and the language of the statute by suggesting that Supreme Court precedent has settled this issue. Ante at 1344-45. Of course, that is a question for the Supreme Court to answer, but reading the statute as it is written is in fact fully consistent with cases like Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34 (1938).
Specifically, the description doctrine under a correct reading of the statute shows that a specification satisfies the “written description of the invention” requirement when it tells a person of skill in the art what the invention is. In other words, a proper reading of the statutory description requirement recognizes that the enablement requirement identifies the invention and tells a person of ordinary skill what to make and use. Of course, the original claims must always, by statute, “particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention.” § 112, ¶ 2. Schriber-Schroth, as the court acknowledges, dealt with amended claims, as did MacKay Radio & Tel. Co. v. Radio Corp. of Am., 306 U.S. 86, 59 S.Ct. 427, 83 L.Ed. 506 (1939), and Gill v. Wells, 89 U.S. (22 Wall.) 1, 22 L.Ed. 699 (1874). These cases stand only for the unremarkable proposition that an applicant cannot add new matter to an original disclosure. Thus Supreme Court precedent is fully consistent with the logical reading of the statute and impeaches this court’s ultra vires imposition of a new written description requirement for original claims, an imposition that first arose in Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559, 1566-69 (Fed.Cir.1997).
At this point, this dissent could once again document, as in Enzo, that every case before this court’s fabrication in 1997 actually applied the “written description” doctrine to police priority. Before 1982, this court’s predecessor referred to this doctrine as a new matter prohibition with respect to claims. See In re Rasmussen, 650 F.2d 1212, 1214 (CCPA 1981) (“The proper basis for rejection of a claim amended to recite elements thought to be without support in the original disclosure is § 112, first paragraph, not § 132.... [The latter section] is properly employed as a basis for objection to amendments to the abstract, specifications, or drawings ....”) (emphasis added). In Eli Lilly, this court tragically did not even *1364 realize that it was breaking new ground. It was not until Enzo that the court really became aware of its own activism. 323 F.3d at 971 (Lourie, J., concurring) (“It is said that applying the written description requirement outside of the priority context was novel until several years ago. Maybe so, maybe not; certainly such a holding was not precluded by statute or precedent. New interpretations of old statutes in light of new fact situations occur all the time.”). In sum, to its own surprise, the court learned in Enzo that it had applied the written description doctrine according to its broad title when in fact the doctrine had never policed description in general but only new matter abuses.
With Enzo, rather than admit error, this court began to thrash about to try and locate support for its new creation. Sadly this court cannot find any Supreme Court case that supports its new creation. This court attempts to twist some words in O’Reilly v. Morse to support its new conception. See 56 U.S. (15 How.) 62, 120-21, 14 L.Ed. 601 (1853) (“[A person] can lawfully claim only what he has invented and described, and if he claims more his patent is void.”). That case, however, did not ask the Court to address whether an enabling description would have been sufficient (which is probably why the court relegates its description of Morse to a footnote, see ante at 1364 n. 4). And this court clearly overstates the language of Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., where the Supreme Court discussed passingly a non-exhaustive list of requirements found in § 112 as a whole, not simply the first paragraph. See 535 U.S. 722, 736, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).*
As a kicker for its statutory interpretation, the court draws on the “quid pro quo of a patent.” Ante at 1345. To the contrary, this court’s new creation offers the public nothing more in exchange for a patent than the statutory enablement requirement already ensures. As the Supreme Court explains, the “quid pro quo [for a patent monopoly] is disclosure of a process or device in sufficient detail to enable one skilled in the art to practice the invention once the period of the monopoly has expired.” Universal Oil Prods. Co. v. Globe Oil & Ref. Co., 322 U.S. 471, 484, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944) (emphasis added). What “teaching function,” Ariad, 560 F.3d at 1370 (quoting Univ. of Rochester, 358 F.3d at 922), does the court propagate by telling an inventor that a patent application must show “possession as shown in the disclosure,” whatever that means? Inventors, to my knowledge, are always quite certain that they possess their invention.
II.
Eli Lilly was not only new law, it also is in tension with other areas of long-established law: claim construction and blocking patents, to name just two.
The doctrine of claim construction, a doctrine that is framed by the first two paragraphs of § 112, Phillips, 415 F.3d at 1311-12, presents an undeniable conflict of monumental proportions. As Phillips confirmed, and this court has confirmed and *1365 reconfirmed, claims must be read “ ‘in view of the specification’ ” to determine their meaning. 415 F.3d at 1315 (quoting Markman v. Westview Instruments, 52 F.3d 967, 979 (Fed.Cir.1995)); see, e.g., id. (“Claims must always be read in light of the specification. Here, the specification makes plain what the appellants did and did not invent ....”) (quoting In re Fout, 675 F.2d 297, 300 (CCPA 1982) (alteration in original)); Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed.Cir.2009) (“[T]he claims cannot enlarge what is patented beyond what the inventor has described as the invention.”) (quotation omitted).
If this court followed its own rule and ensured that claims do not enlarge what the inventor has described, then the claims would never have a scope that exceeds the disclosure in the rest of the specification. Thus, this court would never find a claim that “lacks support” (again, whatever that means) in the rest of the patent document. In other words, this court’s new written description doctrine only has meaning if this court ignores its own claim construction rules. This court essentially claims unfettered power to err twice — both in construing the claims so broad as to exceed the scope of the rest of the specification and then to invalidate those claims because it reads the specification as failing to “support” this court’s own broad conception of the claimed subject matter.
“A ‘blocking patent’ is an earlier patent that must be licensed in order to practice a later patent. This often occurs, for instance, between a pioneer patent and an improvement patent.” Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1379 n. 2 (Fed.Cir.2000). The Supreme Court has long acknowledged the “well established” rule that “an improver cannot appropriate the basic patent of another and that the improver without a license is an infringer and may be sued as such.” Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298 (1928). This blocking condition can exist even where the original patentee “failed to contemplate” an additional element found in the improvement patent. A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed.Cir.1983).
Blocking conditions conceivably occur often where a pioneering patent claims a genus and an improvement patent later claims a species of that genus. See, e.g., Utter v. Hiraga, 845 F.2d 993, 998 (Fed.Cir.1988) (holding that in an interference proceeding “[tjhere is no inconsistency in awarding a generic count to one inventor, while awarding a patentably distinct species count to another.”); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1554 (Fed.Cir.1983) (“Assuming [the first-in-time patent is] a dominating patent, the rule of law is clear that an accused infringer’s employment of the process of a dominating patent does not render that employment an anticipation of an invention described and claimed in an improvement patent.”). These blocking patents often serve the market well by pressuring both inventors to license their innovations to each other and beyond.
After Eli Lilly, however, the value of these blocking situations will disappear unless the pioneering patentee “possessed,” yet for some reason chose not to claim, the improvement. That situation, of course, would rarely, if ever, happen. See Rochester, 375 F.3d at 1312 (Rader, J., dissenting) (“Inventors know when they have made an invention and realize that they must properly disclose it or risk losing it entirely.”). Unfortunately the new Eli-Lilly doctrine effectively prevents this long-standing precept of patent law. For example, although “[i]mprovement and selection inventions are ubiquitous in patent law; such developments do not cast doubt on enablement of the original invention,” *1366 CFMT, Inc. v. Yieldup Int’l Corp., 349 F.3d 1333, 1340 (Fed.Cir.2003), they apparently do cast doubt on the written description of the original invention. See also Integra Lifesciences I, Ltd. v. Merck KGaA, 331 F.3d 860, 869 (Fed.Cir.2003), vacated on other grounds, 545 U.S. 193, 125 S.Ct. 2372, 162 L.Ed.2d 160 (2005) (“The '525 patent is a genus patent. Such genus patents do not estop the applicant from later filing an improvement patent ... to claim species with particularly useful properties.”). Without this new rule, downstream and upstream innovators in this case would have benefited from the ability to cross license. Under the new regime, mere improvements will likely invalidate genus patents. The principle of unintended consequences once again counsels against judicial adventurism.
III.
Under this new doctrine, patent applicants will face a difficult burden in discerning proper claiming procedure under this court’s unpredictable written description of the invention requirement. The court talks out of both sides of its mouth as it lays out the test. On the one hand, the test seems to require the fact finder to make a subjective inquiry about what the inventor possessed. Ante at 1350-51. On the other, the court states that the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. But a test becomes no less subjective merely because it asks a fact finder to answer the subjective question objectively. This court still asks the fact finder to imagine what a person of skill in the art would have understood the inventor to have subjectively possessed based on the description in the specification (which of course by definition describes the exact same invention according to this court’s claim construction rules).
The court makes the subjective/objective nature of the test even more confusing by perpetuating the test’s status as a question of fact. Other related, objective inquiries that focus on the four corners of the specification, such as claim construction and enablement, are questions of law. If the court is right that the written description of the invention test is objective, then either the court misclassifies written description or claim construction and enablement. Moreover, if the test were truly objective, this court would not have such trouble defining it. As it stands, the court’s inadequate description of its written description requirement acts as a wild-card on which the court may rely when it faces a patent that it feels is unworthy of protection.
A reading of the statute, on the other hand, supplies a strong enablement test with a neutral, empirical, and predictable test:
Enablement already requires inventors to disclose how to make (reproduce, replicate, manufacture) and how to use the invention (by definition rendering it a “useful art”). Therefore, because the competitor can make the invention, it can then acquire the DNA sequence or any other characteristic whenever it desires. Meantime the competitor can use, exploit, commercialize (outside the patent term) or improve upon and design around (within the patent term) as much of the invention as it cares to make. In other words, the statutory standard for sufficiency of disclosure serves masterfully the values of the patent system.
Enzo, 323 F.3d at 980-81 (Rader, J., dissenting).
In sum, the statute supplies a test for description that has operated marvelously for decades, if not centuries. If this court perceives a need for renewed attention to *1367 description requirements, it should strengthen its enablement jurisprudence instead of making new rules. Invention of new technologies strengthens and advances the “useful arts,” but invention of new doctrines frustrates and confuses the law.

 The court's reliance on Festo, ante at 1346-47, is all the more perplexing because the Supreme Court in that case hardly purported to resolve the present question of massive consequence for all of patent law. See El Paso Co. v. United States, 694 F.2d 703, 711 (Fed.Cir.1982) (stating in the context of pertinent dicta from a Supreme court opinion: “Usually ... one seeking for valid precedents will pay more attention to what courts actually do with the case before them, than to dicta pronouncing rules textually extending beyond the facts of that case to other cases undreamt of by the deciding tribunal.”). This court's need to point to dicta to support its conclusion merely establishes the point that the Supreme Court has yet to decide the issue.